UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 5:20-CR-01549-02 |
| | § | |
| MARIA LUISA GARZA-SALAZAR | § | |

**FACTUAL STATEMENT IN SUPPORT OF PLEA AGREEMENT**

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas and José Angel Moreno, Assistant United States Attorney, and the defendant, **MARIA LUISA GARZA-SALAZAR** and the defendant's counsel, hereby stipulate as follows:

I.

If this case proceeded to trial, the United States of America would prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the Defendant's guilt:

II.

**MARIA LUISA GARZA-SALAZAR, a.k.a. "MARI"** (**MARI**) was an employee at **HERBARIO CORPUS CHRISTI** on Corpus Christi Street in Laredo, Texas.

On February 1, 2018, U.S. Fish and Wildlife Service Special Agents (SA), acting in an undercover capacity, visited **HERBARIO CORPUS CHRISTI** and made contact with **MARI**. The SAs asked about the hummingbird charms. **MARI** told the SAs she did not have any at the time, but could probably get some later and they would cost twenty-five dollars ($25).

On April 11, 2018, undercover agents visited **HERBARIO CORPUS CHRISTI**. Agents again made contact with **MARI** and asked about the hummingbird charms. Again, **MARI** did not

have any chuparrosas available for purchase. <u>She stated the supplier came from Mexico and were not easy to get</u>. **MARI** asked the Agents how many chuparrosas they wanted to buy, and they replied fifty (50). SAs left an undercover phone number with **MARI** and ended the undercover contact. At approximately 3:00 p.m., SAs received a phone call from **MARI** stating that she could order the fifty (50) hummingbirds for them at twenty dollars ($20) each. She stated she could have the birds by the following week. The SAs told her they would go by later that afternoon. SAs met **MARI** at **HERBARIO CORPUS CHRISTI**. **MARI** stated that the birds would arrive on Wednesday or Thursday of the following week. <u>**MARI** stated that her supplier comes about once a month from Mexico City.</u> **MARI** also stated that she could supply large quantities of chuparrosas to the SAs as she had sold seventy-five (75) chuparrosas to an individual two (2) weeks earlier. SAs gave MARI $500.00 as a deposit for the order and received a receipt.

On April 21, 2018, SAs received a call from **MARI**. She notified the SAs of delivery of the fifty (50) chuparrosas they had ordered, and also offered an additional forty (40). SAs agreed to buy an additional twenty (20) chuparrosas [a total of 70] from **MARI**. **MARI** also stated she would not charge taxes. SAs then received a text message from **MARI**. Attached to the text message were two (2) pictures of the prepared chuparrosas that were ordered on April 11, 2018. SAs later received a voicemail from **HERBARIO CORPUS CHRISTI** inquiring if they liked the pictures or needed anything else.

On April 23, 2018, **MARI** contacted SAs via telephone to confirm delivery and pick up of the chuparrosas. SA Rodriguez told **MARI** they would go by the following Thursday afternoon [4-26-18]. On April 26, 2018, SAs visited **HERBARIO CORPUS CHRISTI**. SAs paid **MARI** $900.00, the remainder of the agreed upon **$1,400 for seventy (70) chuparrosas**. SA Rodriguez then counted the chuparrosas and ended the undercover contact. On May 17, 2018, and June 13,

2018, SAs received phone calls from **MARI**. The calls were to discuss future chuparosa purchases. SAs thanked **MARI** for the offer, and told her they would let her know if their clients needed any more, and that when they ordered it would probably be a big order again.

On June 13, 2018, SAs visited **HERBARIO CORPUS CHRISTI**. They also discussed possible future orders of chuparrosas. On July 9, 2018 SAs received a call from **MARI** and discussed another order of hummingbirds and that maybe SAs could drop off a deposit for the order. No exact number was discussed, but **MARI** mentioned that the quantity was not important as long as SAs gave her about a week's notice. That afternoon, SAs visited **MARI** and bought twenty-four (24) candles, seven (7) bottles of essential oil. SAs asked if **MARI** has any chuparrosas. She replied yes and retrieved a basket from behind the counter with fifteen (15) chuparrosas. SAs bought the candles, oils, and **fifteen (15) chuparrosas for $377.50**. **MARI** told SAs that if they could lend her some money, she could drop the price per bird (chuparrosas) by two (2) or three (3) dollars. SAs told **MARI** that they could potentially have the money (loan payoff) to lend to **MARI** by Friday or Monday. **Mari** asked SAs if she should prepare the new orders of chuparrosas the same way she has been preparing them (with the bowtie, prayer and package) and SAs said yes. <u>**MARI** stated to SA Rodriguez that he must be careful because these (the chuparrosas) are prohibited.</u> SAs asked where the chuparrosas were originating from. <u>**MARI** stated that they came from Mexico - that is why they are so expensive, because they have to cross from Mexico.</u>

On November 27, 2018, SAs received a text from **MARI**. She texted SAs, '*ya llegaron*' (they have arrived). SAs later asked how many had arrived, and **MARI** responded that she would check. On December 6, 2018, SAs visited **HERBARIO CORPUS**, and attempted to complete a purchase of chuparrosas from **MARI**. Upon arrival at the store, Cecilia CASTANEDA, a.k.a.

"CECI" (the store owner) informed the SAs that **MARI** was in Houston, Texas, and would return December 22, 2018. CECI stated that **MARI** took the hummingbirds with her and was preparing them. SA Rodriguez then ended the undercover contact. A few minutes after leaving the store, SAs received a call from **MARI**. **MARI** said that she had "them" in Houston and was "preparing" them for the SAs. The SAs agreed to come back to Laredo in two (2) to three (3) weeks and pick up the prepared chuparrosas. **MARI** stated she had eighty (80) chuparrosas and could have them in Laredo the following Thursday; however, the SAs did not settled on a final number of chuparrosas to purchase.

SAs called **MARI** on January 22, 2019 regarding the purchase of the hummingbirds. **MARI** stated she had 80 birds at the store, and it was agreed that the SA would purchase 25 birds at $20.00 each. **MARI** said she was in Houston but would call the store and speak to CECI to let her know that they would be going by to purchase 25 birds. On January 23, 2019, SAs went to **HERBARIO CORPUS CHRISTI** to pick up the 25 chuparrosas that had previously been ordered; however, when the SAs arrived, neither CECI nor **MARI** were available. A young male employee told the SA the birds were $25, so SA purchased only **20 birds for a total of $500.00**. SAs later received a call from **MARI** telling them that there had been a mix-up earlier that day. According to **MARI**, CECI was not present at the store and the other sales people were not aware that the agent's price for hummingbirds was $20 and not $25. **MARI** said that **the other 5 birds** were at the store and were ready for pick up.

On March 6, 2019, SAs called **MARI** and asked if she could send the outstanding order of five (5) chuparrosas ordered in December 2018 to an undercover P.O. Box address. **MARI** stated that she was in Houston taking care of her grandchild but she could drop off the chuparrosas to the SAs on her way through San Antonio. **MARI** explained that she has birds that she transported to

Houston for customers there and would have additional birds to drop off in San Antonio. The SAs explained that the birds were really going to the cousin in Dallas, and it would be easier for **MARI** to simply mail the birds to the P.O. Box address. **MARI** agreed and the SAs texted the address to **MARI**.

On April 29, 2019, the UC agent sent a text communication to **MARI** and asked how many hummingbirds **MARI** could sell. **MARI** indicated she had sixty (60) plus the five (5) remaining hummingbirds from a past order. **MARI** offered the hummingbirds at $20 each and indicated the price was exclusively offered to the SAs. On April 30, 2019, the SAs asked if it was possible for **MARI** to acquire twenty (20) more hummingbirds. On May 1, 2019, **MARI** indicated she had requested the delivery of hummingbirds, but they would be delivered for a week. The SAs asked how many hummingbirds **MARI** had to offer. **MARI** stated she had her provider count the hummingbirds and there were only fifty-one (51) plus the five (5) extra hummingbirds. **MARI** stated she ordered the extra hummingbirds for the SAs and had asked for twenty-nine (29) more hummingbirds. The SAs reaffirmed the request for the extra twenty-nine (29) hummingbirds. **MARI** indicated she placed the order, and that she should have them all by the next week. She asked if the UC agent needed more or if that would satisfy the request.

On May 8, 2019, SAs entered **HERBARIO CORPUS CHRISTI** and asked for CECI or **MARI**. An older female employee said that CECI was out and **MARI** no longer worked there. SAs waited for CECI to come back and brought fifty-six (56) chuparrosas for the SAs. CECI counted out the birds and the **SAs paid $1,020 for fifty-one (51) of them as she had previously paid for the other five (5) chuparrosas**. CECI stated the chuparrosas come from Mexico and the supplier sends somebody to cross the birds at the Columbia Bridge as there is less chance for inspection there as opposed to bridge "one" and "two".

Undercover Agents bought a total of **161 hummingbirds** from **MARI** and CECI at **HERBARIO CORPUS CHRISTI** at a cost of **$3,295.00**.

III.

Defendant, **MARIA LUISA GARZA-SALAZAR**, hereby confesses and judicially admits that on or about **April 26, 2018 through May 8, 2019 ,** she knowingly **engaged in conduct that involved the sale of wildlife**, in violation of **Title 16, United States Code, Sections 3372(a)(1), 3373(d)(1)(B), and Title 18, United States Code, Sections 3571(b)(3) and 2.**

_____
**MARIA LUISA GARZA-SALAZAR**
Defendant

APPROVED:

RYAN K. PATRICK
UNITED STATES ATTORNEY

By: \_\_\_*/s/ José A. Moreno*_____ _____
José Angel Moreno John Samuel Paul
Assistant United States Attorney Attorney for Defendant
Southern District of Texas
Telephone: (956) 723-6523
Email: Angel.Moreno@usdoj.gov